## Case No. 9,349.

### MAYNADIER v. DUFF.

[4 Cranch, C. C. 4.] [1]

Circuit Court, District of Columbia. April Term, 1830.

DETINUE—EX CONTRACTU—JUSTICE OF PEACE.

1. Detinue is an action in form ex contractu and not ex delicto; and is not on that ground to be excluded from the jurisdiction of a justice of the peace.

---

[1] [Reported by Hon. William Cranch, Chief Judge.]

2. The justices of the peace in Alexandria county, as single magistrates, have jurisdiction in cases of detinue.

This was an appeal from the judgment of a justice of the peace in the county of Alexandria, in an action of detinue brought by James Duff against William Maynadier, for nine silver spoons and a soup-ladle.

Mr. Taylor, for defendant, the appellant, contended, that a justice of the peace has not jurisdiction in detinue. In Virginia the jurisdiction was given by an act passed in December, 1806, since the separation of Alexandria county from that state. At common law there could be no execution in detinue but a distringas, and a justice of the peace, by the law of Virginia, could issue no execution but a fieri facias, and by that writ the alternative value in detinue could not be made. By the act of congress of 1823 (3 Stat. 743), enlarging the jurisdiction of justices of the peace, a fieri facias, and a ca. sa. only are given, so that a justice of the peace has no means of enforcing a judgment in detinue. None of the provisions of the act of congress apply to such an action. A justice of the peace has jurisdiction only of cases in form ex contractu; and detinue is in form ex delicto. 1 Tidd. Prac. 1.

Mr. Taylor cited Rob. Forms, 366, 367, and the case of Barnard v. Herbert [Case No. 1.347], in this court, July 28, 1829, as to the form of execution in detinue; also, Jordan v. Williams, 3 Rand. [Va.] 501.

Mr. Neale, contrà, submitted the case to the court without argument.

CRANCH, Chief Judge (MORSELL, Circuit Judge, dissenting). In this case it is contended by the appellant, that the justice of the peace had not jurisdiction of this suit because it was in the form of an action of detinue, of which the jurisdiction is not given to a justice of the peace, either by the laws of Virginia existing on the 27th of February, 1801, or by the act of congress of March 1, 1823 (3 Stat. 743), "to extend the jurisdiction of justices of the peace," &c. It is said that the justices have jurisdiction only in actions ex contractu, and that detinue is an action ex delicto. 1 Tidd, Prac. 1. Mr. Tidd, in page 1, says, "Actions upon contract are, account, assumpsit, covenant, debt, annuity, and scire facias;" and in page 5, "actions for wrongs are case, detinue, replevin, and trespass vi et armis." Yet in page 10, he says, "and there is a case where it was held that debt and detinue might be joined in the same action," and for this he cites Gilb. Com. Pl. 5, and 1 Bac. Abr. 30. And in page 93, he says, "Formerly it was not usual to proceed in the king's bench by original writ in debt, detinue, or other action of a mere civil nature." And in pages 95, 96, he says, "In actions of account, covenant, debt, annuity, and detinue, the original writ is called a 'praecipe,' by which the defendant has an option given

him, either to do what he is required, or show cause to the contrary; but in assumpsit and actions for wrongs it is called a 'pone,' or 'si te fecerit securum,' by which the defendant is peremptorily required to show cause in the first instance. In point of form the original writ is special or general—'nominatum vel innominatum.' The former contains the time, place, and other circumstances of the demand very particularly; the latter only a general complaint without expressing the particulars, as the writ of trespass quare clausum fregit," &c. And in page 105, he says, "The first process or proceeding upon the original writ in actions of account, covenant, debt, annuity, and detinue, is a summons;" thereby classing detinue with the actions ex contractu. It appears therefore very clearly from Mr. Tidd's own book, that he committed a mistake in his first page in not classing detinue with the actions upon contract. Whether he also erred in page 5, by classing it with actions for wrongs, is not so clear, yet there is no more wrong in the unjustly detaining a chattel from a man to whom it belongs, than there is in unjustly detaining money which he owes and refuses to pay. When, in detinue, the cause of action is bailment of a thing to be redelivered, it is clearly an action ex contractu; when the cause of action is finding and refusing to deliver the thing to its owner it partakes of the nature of a tort; but still the form of action is ex contractu, and the plea is non detinet, and non culpabilis as in the action of trover and conversion, which, in form, is ex delicto. In detinue, the gist of the action is the unjust detainer; in trover, it is the unlawful conversion. In the former the grievance is temporary; in the latter the loss is total. Mr. Chitty seems to have fallen into the same mistake. In his first volume on Pleading (page 87), he classes detinue under both heads. He says, "Personal actions are in form, ex contractu, or ex delicto; or, in other words, are for breach of contract, or for wrongs unconnected with contract. Those upon contracts are, principally, assumpsit, debt, covenant, and detinue; and those for wrongs are case, trover, detinue, replevin, and trespass vi et armis." Yet in a note in page 117 he says, "as debt and detinue may be joined in the same action, though the judgment is different, (Brownlow, Redivivus, 186; Gilb. Ch. Prac. 5; 2 Saund. 117, b,) and as it has been stated that detinue is not sustainable when the goods come tortiously into the defendant's possession, (3 Bl. Comm. 152, post, 119,) I have therefore considered this action under the head of actions ex contractu." In pages 117, 118, he says, "It lies upon a contract for not delivering a specific chattel in pursuance of a bailment or other contract. But as, to support this action, the property in some particular chattel must be vested in the plaintiff, assumpsit, or debt in the detinet, is the only remedy for the non-delivery of corn, &c., sold, where no specific corn was contracted for." In page 121, he says: "This

action is, in most cases, still subject to wager of law; on which account it was not much in use till that mode of trial became obsolete, but now it is frequently adopted." In page 122, Mr. Chitty again says: "Personal actions, in form, ex delicto, and which are principally for the redress of wrongs unconnected with contract, are case, trover, detinue, replevin, and trespass vi et armis." And in a note to the word "detinue," in this passage, he says: "We have already considered this action, which, we have seen, lies for the nondelivery of goods according to a contract, and therefore it is unnecessary to give it further consideration." Mr. Chitty seems to have confounded two ideas which ought to have been kept distinct, namely, the cause and the form of action. The cause of action may really arise ex delicto, and yet the party may, perhaps, in some cases, by waiving the tort, have remedy by an action in form, ex contractu; and this may be the reason why Mr. Chitty has classed detinue under both heads. When the owner has lost his goods, and they are found by a stranger, who refuses to deliver them to the owner, detinue lies; and yet there was no contract unless the law, in civil cases, will imply that every man has contracted to do what, in law, he was civilly bound to do. The cause of action, if not exactly ex delicto, is quasi ex delicto; yet our ancestors, more than six hundred years ago, gave a remedy by a writ in form, ex contractu, and even gave the very writ of debt itself, as well as detinue, for goods unjustly detained. See the forms of writs of debt in Reg. Brevium, 139; 1 Bac. Abr. 30; 2 Bac. Abr. Debt, F, and the cases there cited; Rast. Ent. 150a, where there is the form of a declaration in debt for money, joined with detinue for goods, in the same count, and wager of law as to both causes of action. And in Rast. Ent. fol. 174a, is the form of the judgment, in a like case, for the plaintiff's debt and damages, and also for ten quarters of malt, or the value thereof, and a distringas awarded as to the malt, and a writ of inquiry of damages for the detention of the malt and of the value of the malt, in case it should not have been delivered to the plaintiff. And in Co. Ent. 158a, pl. 32, is an action of debt, for money, in the debet and detinet, and for goods in the detinet, in one count. See, also, Fitzh. Nat. Brev. 273, 274; Debt for Chattels; 3 Wood. Lect. 103; 1 Rolle, Abr. 604; Brooke, Abr. "Debt," pl. 211. "The judgment in debt," Mr. Woodeson says, "is for money or goods demanded, and if the goods cannot be had, then for the value, which, if not found by the original verdict, may be ascertained by a writ of inquiry and verdict thereon." Mr. Woodeson classes detinue under the head of personal actions founded on contract; and in page 104, he says: "Detinue has a very close affinity to the last species of debt, and is, indeed, hardly distinguishable from it, except, perhaps, that in detinue the property is supposed to be vested before action brought. When

a plaintiff purposes to recover a specific chattel, this action may be sued, and it may arise either ex contractu, as bailment, or the accidental possession and wrongful detention of goods." Bacon (1 Bac. Abr. 28), who takes his language from Gilb. Com. Pl. p. 4, says: "Personal actions are ex contractu, or those founded on contract, as debt, which is to restore the thing in numero, or detinue, which is to restore the thing in specie, or damages, where it cannot be had; also, actions of covenant, assumpsit, quantum meruit, quantum valebat, covenant, and annuity; or, ex delicto, as trespasses founded upon force, which are trespasses vi et armis; or, upon fraud, which are actions upon the case." In the case of Kettle v. Bromsall, Willes, 120, Willes, C. J., took it for granted that trover and detinue could not be joined. See, also, Mr. Durnford's note to the same case.

Upon the whole, I am satisfied that detinue is an action in form ex contractu, and not ex delicto, and is not, on that account, to be excluded from the jurisdiction of a single justice of the peace. Let us now see whether it is given to a single magistrate, under the statutes of Virginia. By the act of 3d December, 1792, concerning the county and other inferior courts (Rev. Code 1802, p. 84,. § 5), all causes of less value than five dollars, (or two hundred pounds of tobacco,) except prosecutions on penal statutes, are expressly excluded from the jurisdiction of the county courts. By the 6th section, "When the cause of action shall not exceed five dollars (or two hundred pounds of tobacco,) the same is hereby declared to be cognizable, and finally determinable by one justice of the peace who may give judgment and thereupon award execution against the goods and chattels of the debtor, or party against whom such judgment shall be given, which shall be executed and returned by the sheriff or constable to whom directed, in the same manner as other writs of fieri facias are to be executed and returned; but no execution shall be by him granted against the body of the defendant." By the 37th section of the same act, "Any debt or penalty amounting to more than five dollars, (or two hundred pounds of tobacco, and not exceeding twenty dollars, or eight hundred pounds of tobacco,) may be demanded, by petition to the court of a county, city, or borough." "And the defendant being summoned," "the court shall and may hear and determine the matter in dispute in a summary way," "and give such judgment as shall appear to be just." And by the 38th section, "Any person may, by petition, to be served and tried in like manner, demand and recover goods detained, or the value of them, and damages for the detention; or damages for goods found by the defendant, and converted to his use, where the goods, with the damages, are not of greater value than twenty dollars. (or eight hundred pounds of tobacco.)" And "Whosoever shall bring any other action than a petition, if it appear, either by his own

showing in the declaration, or by the verdict of a jury, that he might have brought a petition by this act, shall be nonsuit." It is evident, that, by the 5th section of this act, the county court has not jurisdiction of detinue in a cause of less value than five dollars; and that, by the 6th section, such a cause is cognizable and finally determinable by one justice of the peace, who has authority to award execution against the goods and chattels of the party against whom the judgment shall be given. The 37th and 38th sections, only authorize the county courts to exercise their jurisdiction in a summary way, in certain causes, and confine the jurisdiction of those causes to the county or corporation courts, and do not, in any manner, affect the jurisdiction given by the 6th section, to a single justice of the peace.

The act of the 16th of January, 1801, only extends the jurisdiction of a single justice of the peace to causes of ten dollars value, in cases where they had, before, jurisdiction to the value of five dollars. If a justice of the peace had not jurisdiction in detinue, in causes of five dollars value, no court had; for all causes of less value than five dollars were expressly excluded from the jurisdiction of the county courts by the 5th section of the act. Thus the law stood in Alexandria county on the 27th of February, 1801, when the laws of Virginia were adopted by the act of congress (1 Stat. 103), "concerning the District of Columbia," by which justices of the peace were to be appointed, who should, "in all matters, civil and criminal, and in whatever relates to the conservation of the peace, have all the powers vested in, and perform all the duties required of, justices of the peace as individual magistrates, by the laws thereinbefore continued in force in that part of the District, and should have cognizance in personal demands, to the value of twenty dollars, exclusive of costs." And thus their jurisdiction continued until the 1st of March, 1823, when the act of congress (3 Stat. 743), was passed, "to extend the jurisdiction of justices of the peace, in the recovery of debts in the District of Columbia." This act, it is said, contains provisions and terms inconsistent with the nature of the action of detinue, and with the process necessary to enforce the judgment; and, therefore, even if detinue to the value of five, or ten, or twenty dollars, could be maintained before a single justice, yet it cannot be maintained where the value is over twenty dollars.

The expressions and terms relied upon as designating the nature of the causes of action whereof jurisdiction is intended to be given to the justice of the peace, and to limit it to a certain species of personal actions, are the following, to wit: In the 1st section, the words, "debt and damages," "debtor," "creditor and debtor," "an interest thereon," that is, on the judgment; in the 6th section, the words "debt or damage;" in the 7th section, the words "debt or demand;" in the 9th sec-

tion, the words "debtor and his sureties;" in the 10th section, the words "small debts;" and in the 15th section, the words "sum demanded." An argument is also drawn from the circumstance, that the only kinds of execution, mentioned in the act, are ca. sa. and fi. fa.; and that no provision is made for a distringas, which is the proper process to enforce the judgment in detinue. But the 3d section, which authorizes the justice to issue execution, does not designate the kind of execution. The words are, "authorized to issue execution or fieri facias, in the same manner as executions are now issued by the clerk of the circuit court of the District of Columbia." Whatever execution the clerk could issue, the justice may issue. It is true that the only executions named in the 9th section, are ca. sa. and fi. fa.; but that section is only applicable to executions upon supersedeas. The 13th section, also speaks only of ca. sa. and fi. fa., but it has no negative words to control the general authority given by the 3d section, or to exclude a distringas, or such an execution as was issued by this court, in the case of Barnard v. Herbert [Case No. 1,347], in July, 1829. If a justice of the peace has jurisdiction in debt, or detinue, for goods, I see nothing in the act to prevent his issuing a proper execution. The argument drawn from the words "debt" and "debtor," &c., is answered, by showing, that, at common law, an action of debt will lie as well for a specific chattel as for a sum of money; and that by the civil law, a man is said to be debtor for a specific article, as well as for the performance of a specific duty. I mention the civil law, because the original jurisdiction of a justice of the peace, in civil cases, and the manner of trial and appeal, are all analogous to the rules of that law, and seem to me to be founded thereon.

Upon the whole, I am satisfied that the justices of the peace in Alexandria county have jurisdiction in cases of detinue. I am also satisfied by the evidence, that Mr. Maynadier had no authority to sell the spoons at private sale, and that the judgment ought to be affirmed. Judgment affirmed. MORSELL, Circuit Judge, dissenting.